UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC GALA and
CHESTER R. GALA,

    Plaintiffs,                                           Civil Action No. 16-CV-10147

vs.                                                    HON. BERNARD A. FRIEDMAN

CITY OF FRASER,
CITY OF FRASER
DEPARTMENT OF PUBLIC SAFETY,
MACOMB COUNTY PROSECUTOR'S OFFICE,
GEORGE T. ROUHIB, JR.,
DAN KOLKE,
JASON POOLE,
CHRISTOPHER ASHLEY and
DTE ELECTRIC COMPANY,

    Defendants.
_____/

## **OPINION AND ORDER GRANTING**
## **DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This matter is presently before the Court on (1) the motion of defendant DTE Electric Company ("DTE") for summary judgment [docket entry 41]; (2) DTE's motion for leave to file a second motion for summary judgment [docket entry 48]; (3) DTE's second motion for summary judgment [docket entry 53]; (4) the motion of the Macomb County Prosecutor's Office for summary judgment [docket entry 52]; and (5) the motion of defendants City of Fraser, City of Fraser Department of Public Safety, George Rouhib Jr., Dan Kolke, Jason Poole, and Christopher Ashley for summary judgment [docket entry 54]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

Plaintiff Eric Gala is the owner of the Flamingo Motel in Fraser, Michigan. Plaintiff Chester R. Gala is Eric Gala's son. The Galas allege that defendants conspired to violate their due

process and equal protection rights by subjecting them and their motel guests to years of harassment in retaliation for employing and renting rooms to African-Americans. They allege that members of the Fraser police department engaged in this harassment from 1962 to 1976, and that defendants renewed the harassment in 1999. Compl. ¶¶ 19, 23. The harassment allegedly took many forms, but in the years prior to 2013 it consisted mainly of "detaining, searching and ticketing Motel guests who had done nothing illegal." *Id.* ¶ 34.

In January 2013, plaintiffs' motel caught fire. Defendant Kolke and other public safety department personnel allegedly "allowed the fire to continue for six hours in an attempt to destroy at least half of . . . if not the entire Motel." *Id.* ¶ 39. Allegedly at the behest of the Fraser Department of Public Safety, a DTE employee was called "to pull up the gas line across the street . . . and pinch off the line to shut the gas off from the Motel." *Id.* ¶ 41. After the fire, defendant Ashley allegedly ordered an excavator operator to cause excessive damage to the motel's roof and guestrooms. *Id.* ¶ 44-45. A member of the Fraser zoning commission, Kent Stonebreaker, who is also "an influential DTE executive who is in charge of power restorations, deliberately hindered and delayed restoring power." *Id.* ¶ 46. The city allegedly "withheld inspections and permits" to delay the reopening of the motel after the fire. *Id.* ¶ 51.

In November 2013, Fraser police officers came to the motel and removed Eric Gala's elderly and infirm parents, who were living at the motel. *Id.* ¶ 61. Defendant Ashley allegedly told Eric Gala, "'I hear you didn't like the way we handled the fire,' implying that the police seizure of Eric Gala's parents was payback for complaining about the . . . handling of the fire and for keeping the Flamingo Motel in business." *Id.* ¶ 65. In November 2013, Eric Gala was charged with "two counts of vulnerable adult abuse, one count as to each of his parents." *Id.* ¶ 70. At the preliminary

2

examination, defendant Poole and other prosecution witnesses allegedly gave false testimony against Eric Gala. *Id.* ¶¶ 77-79. Eric Gala was later also charged with embezzlement "in connection with insurance funds that were received after his mother's home was destroyed in a fire." *Id.* ¶ 89. At the trial, he was convicted of abusing his mother and acquitted of abusing his father; the jury could not reach a verdict on the embezzlement charge. *Id.* ¶ 106. Eric Gala alleges that the charges were false and that the prosecutor engaged in misconduct by concealing certain evidence from the jury. *Id.* ¶ 105.

In June 2015, two DTE contract workers turned off the power at Eric Gala's house, where his son Chester also lived. *Id.* ¶ 93. These workers allegedly attempted to hit Chester Gala with their truck when he attempted to get their names and license plate number. *Id.* ¶ 99. When Eric Gala called DTE to complain, DTE's head of security allegedly asked him "if he owned the Flamingo Motel." *Id.* ¶ 101. Chester Gala was charged with assault "even though he and the Galas were the victims." *Id.* ¶ 102. This charge, which was brought by the Macomb County prosecutor, allegedly was deliberately made after the sheriff's department records of Chester Gala's 911 call and his interactions with a sheriff's deputy were destroyed – records Chester Gala alleges would have exonerated him. *Id.* ¶¶ 103-104.

The complaint asserts five counts, but the Court has previously dismissed Counts IV and V (*see* docket entry 20). In Count I, Eric Gala claims that all of the defendants violated his due process and equal protection rights, and in Count II he claims that all of the defendants conspired to do so. Specifically, he claims that defendants violated his rights by

> A. Ticketing and threatening Eric Gala so that the Flamingo Motel would stop renting rooms to black people;
>
> B. Interfering with Eric Gala's business and income by threatening,

> detaining, searching and ticketing black and minority guests of the Flamingo Motel who had done nothing illegal;
>
> C. Interfering with Eric Gala's business and income by threatening, detaining, searching and ticketing employees of the Flamingo Motel who had done nothing illegal;
>
> D. Interfering with Eric Gala's business and income by subjecting him to unfair scrutiny, inspections and applications of building ordinances;
>
> E. Interfering with Eric Gala's business and income by unfairly withholding permits;
>
> F. Interfering with Eric Gala's business and income by allowing the Flamingo Motel to be consumed by the fire instead of acting in accordance with their duty to put it out;
>
> G. Forcibly removing Eric Gala's parents from their home in the Flamingo Motel;
>
> H. Destroying evidence in the form of surveillance recordings that corroborated the wrongful actions taken to harm Eric Gala;
>
> I. Providing and bringing false charges against Eric Gala;
>
> J. Providing false testimony and evidence against Eric Gala; and
>
> K. Depriving Eric Gala of a fundamentally fair trial.

*Id.* ¶ 114. In Count III, Chester Gala is suing defendants Macomb County Prosecutor's Office and DTE for violating his due process and equal protection rights "by wrongfully prosecuting him." *Id.* ¶ 131.

***Summary Judgment Standard***

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not

4

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See id.* at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

***Motion of Defendants City of Fraser, City of Fraser Department of Public Safety, Rouhib, Kolke, Poole, and Ashley for Summary Judgment [docket entry 54]***

These defendants (collectively, the "Fraser defendants") seek summary judgment on various grounds, including that claims relating to Eric Gala's arrest and conviction for vulnerable adult abuse are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); that Eric Gala is collaterally estopped from relitigating any of the factual issues determined at his criminal trial; that all claims preceding January 15, 2013 (i.e., three years before the instant action was commenced) are time-barred; that Eric Gala has no evidence that defendants conspired to violate his constitutional rights; that the individual defendants are qualifiedly immune; and that Eric Gala has no evidence to show that any municipal policy or custom was the moving force of any of the alleged violations of his rights.

Plaintiffs have not responded to this motion. Under Fed. R. Civ. P. 56(e)(2), the facts as presented by defendants are undisputed. The Court concludes that the Fraser defendants are

entitled to summary judgment for all of the reasons presented in their motion.

*Defendant DTE's Motion for Summary Judgment [docket entry 41]*

Defendant DTE seeks summary judgment on the grounds that it is not a state actor. As noted above, DTE's involvement in this case is that it allegedly turned off the gas to the Flamingo Motel while it was burning, that it delayed restoring power to the motel after the fire, that it turned off the power to Eric Gala's home in June 2015, that two of its contract workers attempted to hit Chester Gala with their truck as he attempted to get their names and license plate number, and that Chester Gala was later charged with assault. Compl. ¶¶ 41, 46, 93, 99, 102.

To hold a private entity such as DTE liable under 42 U.S.C. § 1983 for a violation of constitutional rights, plaintiffs must show that its actions are "fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). The Sixth Circuit

> has recognized as many as four tests to aid courts in determining whether challenged conduct is fairly attributable to the State: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test. *Vistein v. Am. Registry of Radiologic Technologists*, 342 Fed.Appx. 113, 127 (6th Cir. 2009) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)).

*Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014). The public functions test inquires whether defendants "exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Id.* (citations omitted). "The state compulsion test requires that the state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007) (citation omitted). The symbiotic relations or nexus test inquires whether "there is a sufficiently close nexus between the state and the

6

challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Marie*, 771 F.3d at 363 (citations omitted). And the entwinement test "requires that the private entity be entwined with governmental policies or that the government be entwined in [the private entity's] management or control." *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 128 (6th Cir. 2009) (citations omitted). Further, "private persons may be held liable under § 1983 if they willfully participate in joint activity with state agents." *Cramer v. City of Detroit*, 267 F. App'x 425, 427 (6th Cir. 2008). Regardless of the test used, the private actor's conduct must be "'fairly attributable to the state.'" *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 411 (6th Cir. 2006) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982)).

Plaintiffs do not indicate which, if any, of these tests they believe should be used to determine whether DTE is a proper § 1983 defendant. Rather, they assert simply that "more than sufficient evidence establishes that DTE was a state actor subject to § 1983 liability." Pls.' Resp. Br. at 17. Plaintiffs' evidence consists of the same allegations that are contained in the complaint:

- that after the fire (which occurred on January 17, 2013) "the Motel passed a City of Fraser electrical inspection on January 21, 2013," but DTE did not restore power until February 1, 2013. Pls.' Resp. Br. at 18. Plaintiffs believe that collusion between DTE and the Fraser defendants lies in the fact that "Stonebreaker, a member of the Fraser Zoning Commission and the DTE executive who was in charge of power restoration at the Motel, deliberately hindered and delayed restoring power." *Id.*

- that "it was not until Eric Gala was able to contact Gary Sparagowski of DTE, Stonebreaker's boss's boss, that DTE, through Mr. Sparagowski, ordered the Motel power to be restored. . . . William Apps, an electrician used by Eric Gala and also the City of Fraser . . . overheard Stonebreaker talking about how he attempted to prevent restoring power to the Motel and how Eric Gala somehow got in touch with Mr. Sparagowski to get the power restored." *Id.* at 18-19.

7

- that DTE turned off power to Eric Gala's home although "the Galas never received any payment delinquency notices or shutoff notices," and that when Eric Gala complained about the power shutoff "the DTE employee repeatedly asked Eric Gala if he owned the Motel thus confirming that the termination was a continuation of DTE harassment in accordance with the desire of the Fraser Defendants to force the Motel out of business." *Id.* at 19.

- that "there was no evidence warranting the assault and battery charge against Chester Gala" and the contractors who turned off the Galas' power testified that they "took their orders from DTE in connection with the power shutoff . . . and the filing of the criminal complaint against Chester Gala." *Id.* at 20.

These allegations, even if accepted at face value, do not suffice to equate DTE's conduct with state action. Plaintiffs appear to concede that DTE turned off the power to the motel because it was seriously damaged (nearly to 50%) in the fire. Plaintiffs complain that DTE delayed in turning the power back on, but they acknowledge that the power was in fact restored when Eric Gala complained to DTE. Even assuming the presence of state action, it is clear that no deprivation of plaintiffs' constitutional rights occurred, as the power was restored within two weeks of the fire and, apparently, within hours or days of Eric Gala's complaining to "Stonebreaker's boss's boss."[1]

Moreover, plaintiffs have not shown that DTE's conduct may be attributed to the state. The only link connecting DTE with any person with any semblance of state authority, as it relates to the alleged delay in restoring power to the motel, is Stonebreaker who, according to the

---

[1] Plaintiffs attach a document to their response brief as Ex. 3 which purports (without authentication) to be an approval by a city code official for the motel to receive electrical service as of January 21, 2013. But plaintiffs have also attached what appears to be a DTE work order for construction of "overhead service" and replacement of "all fuses for the 3 services feeding the [motel] site." Pls.' Ex. 4. This work order noted that the motel "ha[s] been approved for service after the fire," and gave a target start date of 1/25/2013 and a target finish date of 2/7/2013 for this work. *Id.* Plaintiffs indicate that electrical service was restored on February 1, 2013, in the middle of these target dates. Plaintiffs have not explained how, by any stretch of the imagination, these facts demonstrate that they were deprived of any rights, much less constitutional rights, regarding the restoration of electrical service to their motel.

8

complaint, is both "an influential DTE executive who is in charge of power restorations" and "a member of the Fraser Zoning Commission."[2] However, the mere fact that Stonebreaker was employed by the city as a member of its zoning commission does not show that he was clothed with any state authority that enabled him to delay the restoration of electrical service to plaintiffs' motel. Plaintiffs do not allege that Stonebreaker, in influencing DTE to delay the restoration of electircal service, acted "in the performance of any actual or pretended duty." *Hudson v. Maxey*, 856 F. Supp. 1223, 1228 (E.D. Mich. 1994) (quoting *Johnson v. Hackett*, 284 F. Supp. 933, 937 (E.D. Pa. 1968)). Rather, by plaintiffs' own admission, Stonebreaker's ability to cause such a delay flowed exclusively from his position as a DTE executive. In short, what plaintiffs allege is the collusion of two private actors (DTE and Stonebreaker). There being no demonstration of state action, DTE is entitled to summary judgment on the claim that it delayed restoring electrical service to the motel.

Plaintiffs' claim that DTE improperly turned off the power at Eric Gala's home fares no better. Assuming that the shutoff was improper (because the electric bill at that residence was not delinquent and/or because no proper shutoff notices were issued), the fact remains that plaintiffs have not shown that DTE's actions may be attributed to the state. Plaintiffs' only evidence of any possible state action is that when Eric Gala complained about the shutoff, a DTE employee "asked [him] if he owned the Motel," which plaintiffs believe shows "that the termination was a continuation of DTE harassment in accordance with the desire of the Fraser Defendants to force the Motel out of business." Pls.' Resp. Br. at 19. Plaintiffs offer no evidence to support this leap. Indeed, plaintiffs have offered no evidence of any collusion between DTE and any of the defendants

---

[2] The Court notes that Stonebreaker also appears on the above-referenced DTE work order as the person who planned the project that restored power to plaintiffs' motel. *See* Pls.' Ex. 4.

9

or any other person acting under color of law. There is simply no basis for attributing DTE's actions to the state. DTE is entitled to summary judgment on this aspect of plaintiffs' constitutional claims.

Finally, Chester Gala claims that DTE violated his due process and equal protection rights "by wrongfully prosecuting him." Compl. ¶ 131. This claim stems from the power shutoff incident at Eric Gala's home in June 2015. The two linemen who turned off the power, Ronald Steele and Christopher LaLone, alleged that Chester Gala angrily confronted them in the home's driveway and, after the linemen turned off the power and were driving away, chased after their truck in a car. Based on Steele's statement and a sheriff's deputy's report, Chester Gala was charged with "assaulting a utility company employee or contractor." Pls.' Ex. 8. At a jury trial in 2016, after the linemen and the deputy testified, the court granted defendant's motion for a directed verdict. Pls.' Ex. 6 at 185.

Plaintiffs cite no authority, and the Court is aware of none, for the proposition that a private actor may be deemed to have acted for or on behalf of the state by making an allegedly baseless criminal complaint. Indeed, the authority of which the Court is aware is to the contrary. *See Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983) ("It is beyond question that, when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.'"). Further, parties and witnesses are immune from liability for testifying in judicial proceedings. *See id.* at 330-31; *Lyle v. Stahl*, 156 F.3d 1230 (6th Cir. 1998). DTE is entitled to summary judgment on this claim on this basis alone.

Moreover, plaintiffs have not shown that DTE had any involvement in bringing the allegedly false assault charge. Steele testified at the trial that DTE "told us we need to go to the Macomb County Sheriff's Office and make a statement" because "Macomb County Sheriff's had

10

contacted them about us coming in and making a statement." Pls.' Ex. 6 at 126. There is simply no evidence suggesting that it was DTE that instigated the filing of the criminal charge. DTE is entitled to summary judgment on this claim.

***Defendant DTE's Motion for Leave to File a Second Motion for Summary Judgment [docket entry 48] and Defendant DTE's Second Motion for Summary Judgment [docket entry 53]***

Because the Court is granting summary judgment for DTE for the reasons presented in its initial motion for summary judgment, its motion for leave to file a second motion for summary judgment (expanding on its initial motion with recently obtained deposition testimony) is denied as moot, as is its second summary judgment motion, which was filed without leave.

***Motion of Macomb County Prosecutor's Office for Summary Judgment [docket entry 52]***

Eric Gala claims that the Macomb County Prosecutor's Office violated his due process and equal protection rights by "[p]roviding and bringing false charges," "[p]roviding false testimony and evidence," and "[d]epriving [him] of a fundamentally fair trial." Compl. ¶ 114(I)-(K). Chester Gala claims that this defendant violated his due process and equal protection rights "by wrongfully prosecuting him." *Id.* ¶ 131.

Defendant is entitled to summary judgment on these claims for at least four reasons. First, the Macomb County Prosecutor's Office is not an entity with capacity to sue or be sued. Under Fed. R. Civ. P. 17(b)(3), capacity is determined "by the law of the state where the court is located." A county prosecutor's office is nothing more than a department of the county that created it. In Michigan, a municipal department is "unable to raise funds for payment and is not liable in tort."

*McPherson v. Fitzpatrick*, 63 Mich. App. 461, 464 (1975). *See also North v. Macomb Cty.*, 2011 WL 4576848, at *2 (E.D. Mich. Sept. 30, 2011) (granting summary judgment, in a § 1983 action

against defendants Macomb County Sheriff's Department and Macomb County Jail, for defendants because "these entities are merely divisions of Macomb County [and] are not separate legal entities that are capable of being sued."). Plaintiffs have sued an entity that cannot be sued.

Second, even if plaintiff had sued the correct party – Macomb County – instead of its prosecutor's office, the Court would grant summary judgment for defendant due to the complete lack of any allegation or evidence suggesting that a county policy was the "moving force" behind the alleged constitutional violations, as required by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). For liability to attach to a municipality in a § 1983 action, plaintiff must "identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987). In the present case, plaintiffs have not shown that Macomb County had any policy of any kind that led to the alleged violations of their rights.

Third, Eric Gala's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote omitted), in which the Supreme Court stated:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*See also Hunt v. State of Mich.*, 482 F. App'x 20, 21 (6th Cir. 2012) ("Under *Heck*, a civil rights action for damages that would imply the invalidity of a conviction may not be brought until the subject conviction has been overturned."); *Gordon v. Livingston*, 2015 WL 2412161, at *2 (E.D. Mich. May 21, 2015) ("*Heck* clearly directs a federal district court to dismiss a civil rights complaint which raises claims that attack the validity of a conviction."). Eric Gala's conviction, as he concedes, has not been overturned.[3]

Fourth, all of plaintiffs' claims against the prosecutor's office are barred by the doctrine of prosecutorial immunity. Under this doctrine, prosecutors are absolutely immune from damages for "activities . . . intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). In particular, as the doctrine relates to the present case, "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Id.* at 431. All of plaintiffs' claims relate to alleged prosecutorial misconduct in the initiation of charges and in the presentation of the case in court. The doctrine plainly bars these claims.

For all of these reasons, plaintiffs' claims against the Macomb County Prosecutor's Office fail, and this defendant is entitled to summary judgment.

***Conclusion***

For the reasons stated above, the Court concludes that all of the defendants in this matter are entitled to summary judgment. Accordingly,

---

[3] The Court takes judicial notice of the fact that Eric Gala's conviction on the charge of abusing a vulnerable adult (i.e., his mother) was affirmed by the Michigan Court of Appeals in September 2017. *See People v. Gala*, No. 334584, 2017 WL 3878996 (Mich. Ct. App. Sept. 5, 2017).

13

IT IS ORDERED that the motion of defendants City of Fraser, City of Fraser Department of Public Safety, Rouhib, Kolke, Poole, and Ashley for summary judgment [docket entry 54] is granted.

IT IS FURTHER ORDERED that defendant DTE's motion for summary judgment [docket entry 41] is granted.

IT IS FURTHER ORDERED that defendant DTE's motion for leave to file a second motion for summary judgment [docket entry 48] is denied as moot.

IT IS FURTHER ORDERED that defendant DTE's second motion for summary judgment [docket entry 53] is denied as moot.

IT IS FURTHER ORDERED that the motion of defendant Macomb County Prosecutor's Office for summary judgment [docket entry 52] is granted.

Dated: April 16, 2018  s/Bernard A. Friedman
Detroit, Michigan  BERNARD A. FRIEDMAN
  SENIOR UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 16, 2018.

                                              s/Johnetta M. Curry-Williams
                                              Case Manager